FILED Rec'd
IN CLERK'S OFFICE 11/18/11
U.S. DISTRICT COURT E.D.N.Y. WM

★ NOV 15 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
JOHN RIVERA,

                Petitioner,

  -against-

UNITED STATES OF AMERICA,

                Respondent.
-------------------------------------------------x

MEMORANDUM AND ORDER

11 CV 969 (ILG)

GLASSER, United States District Judge:

Pending before the Court is the petitioner's *pro se* motion pursuant to 28 U.S.C. § 2255, filed on February 15 2011, seeking an Order that would vacate, set aside or modify his sentence.

## Background

On January 21, 2000, when he was seventeen years old, Rivera and another surrounded the victim, punched him, shoved him to the ground and forcibly stole his money and keys. He pleaded guilty to Robbery, a Class C felony and was sentenced on October 5, 2000 to serve 42 months in custody.

On March 9, 2000, less than three months later, the petitioner was arrested and on September 14, 2000, he pleaded guilty in New York County Supreme Court to attempted criminal sale of crack cocaine, a Class C felony which was then punishable by a maximum sentence of at least ten years, but for which he was sentenced on October 5, 2000 to serve one year in custody.

On April 23, 2000, just over a month later, Rivera was arrested, pleaded guilty in New York County Supreme Court to Attempted Assault and sentenced on January 17, 2001 to serve 42 months in custody.

Within 5 months from his release from custody on October 7, 2003, Rivera was arrested on March 12, 2004, and pleaded guilty in this Court to possessing a .38 caliber revolver in violation of 18 U.S.C. § 922(g)(1). The gun had an obliterated serial number, was missing the cylinder and was inoperable, but Rivera's possession of it was nevertheless a violation of the statute. It was for that violation that he was sentenced as an Armed Career Criminal ("ACC") on June 14, 2005 to imprisonment for fifteen years. That sentence was the mandatory minimum required by the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). That Act was made applicable by his two prior felony convictions and his plea of guilty to the attempted sale of an unspecified amount of crack cocaine, classified as a C felony and punishable under New York law by a maximum sentence of at least ten years at the time that crime was committed.

In 2004, the Rockefeller Drug Law Reform Act lowered the sentence for the Class C felony to a maximum term less than ten years. The drug offense committed by Rivera would thus no longer be considered a serious drug offense and a viable predicate for the ACCA. The amendment became effective on January 13, 2005, and was not explicitly made retroactive. It was that amendment and United States v. Darden, 539 F.3d 116 (2d Cir. 2008), about both of which Rivera belatedly learned that prompted his petition to set aside and modify his sentence. Darden decided in a persuasively reasoned opinion, that the New York law in effect when the federal defendant was sentenced was the relevant law in determining the applicability of the ACCA. Rivera was sentenced in June 2005, five months after the new drug law became effective. Applying that law as of that date, Rivera's guilty plea to the attempted sale of crack would be punishable to a maximum term of less than ten years and no longer a serious drug offense within the

2

meaning of § 924(e)(2)(A)(ii), and not subject to a sentence enhancement under the ACCA. Darden would have required his sentence to be vacated and his case remanded for resentencing.

Counsel was appointed to represent Rivera and a scheduling order was issued directing the parties to submit memoranda of law in support of and in opposition to the petition, with oral argument to be heard on June 17, 2011. All other things being equal, granting Rivera's petition would have been assured by Darden. That assurance was sadly learned to be misplaced when on June 6, 2011, the Supreme Court abrogated Darden in McNeil v. United States, ___ U.S. ___, 131 S. Ct. 2218 (2011), deciding that the court must look to the applicable drug offense sentence at the time of the commission of the crime to determine if it is a serious drug offense within the meaning of the ACCA.

Justice Brennan, at a time and place I regretfully cannot cite, is reported to have said that "nothing rankles more in the human heart than a brooding sense of injustice. Illness we can put up with, but injustice makes us want to pull things down." That observation is exquisitely apt to a consideration of the facts in this case.

In an opinion written more than ninety years ago in In re Rouss, 221 N.Y. 81, 91 (1917), Judge Cardozo observed that "Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be so construed, if possible, that absurdity and mischief may be avoided."

It bears noting that the two felonies and the drug offense which were the predicates for branding Rivera a career criminal were all committed within a span of three months when he was seventeen years old. It also bears noting that the drug

3

offense, which was the catalyst for the ACC characterization could not have been regarded as very serious given the sentence of custody for one year that was imposed. A "career" is generally thought of as an occupation or profession engaged in as a life's work. To say that Rivera has made a career of crime in three months is to assign to the words "career criminal" a meaning they do not have in ordinary speech.

The ACC label was pinned to Rivera when officers on routine patrol saw a potential witness in an unrelated matter with whom they wished to speak. As they approached him, Rivera, who was standing nearby, fled. When apprehended, he was in possession of a .38 caliber revolver from which the cylinder, the part that holds the bullets, was missing. The gun was inoperable, but nevertheless a "firearm" as defined in 18 U.S.C. § 921(a)(3)[1] and therefore a violation of § 922(g) to which he pleaded guilty. It was the violation of that statute which made him an <u>armed</u> career criminal. To be "armed" would suggest being possessed of a weapon effectively used for offensive or defensive purposes. The gun Rivera had was no more effective for either of those purposes than a water gun.

The "categorical approach" to the words of the ACCA adopted in <u>Taylor v. United States</u>, 495 U.S. 575, 602 (1990), led to the classification of Rivera as an armed career criminal and mandated the sentence that was imposed. The consequence of that approach on the facts of this case, however, a mandatory minimum sentence of imprisonment for fifteen years is one that all mankind would surely reject. <u>Sturges v.</u>

---

[1] § 921(a)(3)(B) defines a "firearm" to include "the frame or receiver of any such weapon." Cf. § 922(p)(2)(A) ("the term 'firearm' does not include the frame or receiver of any such weapon.").

Crowninshield, 17 U.S. 122, 203 (1819). (See Manning, The Absurdity Doctrine, 116 Harvard L. Rev. 2387 (2003)).

In a Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System by the United States Sentencing Commission in October of this year, among its Summary of Recommendations at page 368, was that "mandatory minimum penalties should not be excessively severe, and be narrowly tailored to apply only to those offenders who warrant such punishment." That recommendation has particular applicability to this case.

All that having been said, it portends no benefit to Mr. Rivera. The one year limitation on the filing of this petition, 28 U.S.C. § 2255(f), the plea agreement by the terms of which he waived his right to appeal and to challenge his conviction, and more compelling, the law as it was declared to be in McNeil, which I am bound to obey, drives me to deny his petition.

SO ORDERED.

Dated:     Brooklyn, New York
            November 15, 2011

/S/
_____
I. Leo Glasser